UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

RAFAEL MUNOZ, et al.,

    Plaintiffs,

v.

WATSONVILLE COMMUNITY HOSPITAL, et al.,

    Defendants.

Case No. 15-cv-00932-BLF

**ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS**

[Re: ECF 71]

After presenting herself to Defendant Watsonville Community Hospital ("WCH")'s emergency room twice on March 2, 2013, and being released after exam, testing, and prescribed medication, Karina Munoz Hermosillo died at age 27 of an internal hernia and sepsis the next day. This suit was filed by her son claiming alleged violations of the Emergency Medical Treatment and Active Labor Act ("EMTALA"). 42 U.S.C. § 1395dd. Before the Court is Defendant WCH's motion to dismiss Plaintiff's second amended complaint ("SAC"). Mot., ECF 71. WCH further argues that Defendant Community Health Systems Inc. has not been served. Because the Court has granted Plaintiff's motion to amend and for an extension of time to serve Community Health Systems Inc., that issue is moot. ECF 90.

Having reviewed the papers filed in conjunction with the motion, the Court GRANTS IN PART and DENIES IN PART WCH's motion to dismiss for reasons stated below.

**I.   BACKGROUND**

According to the SAC, the facts are as follows. Plaintiff Rafael Munoz as a parent of minor J.M., alleges that J.M.'s mother, Karina Munoz Hermosillo, suffered death as a result of Defendants' violation of EMTALA. SAC ¶ 2. In December 2011, Ms. Hermosillo received gastric bypass procedure at Stanford University Medical Center to counter an obesity problem and

was discharged without complication. *Id.* ¶ 19.  Her post-surgery appointment in June 2012 found her well and losing weight. *Id.* ¶ 20.  Later she started having intermittent episodes of severe abdominal pain, and called a Stanford nurse on December 14, 2012, who advised her to go to an emergency room ("ER"). *Id.* ¶ 21.  On December 28, 2012, a physician at the Dominican Hospital emergency department identified in Ms. Hermosillo intermittent bowel obstruction after gastric bypass surgery and treated her with intravenous medication and hydration. *Id.* ¶ 22.  The obstruction appeared to have resolved at the time and she was discharged. *Id.*

On March 2, 2013, at about 2:39 a.m., Ms. Hermosillo presented herself to the WCH ER, complaining about abdominal pain. *Id.* ¶ 25.  WCH had no records of Ms. Hermosillo from any other facilities and she was not able to communicate her history fully. *Id.* ¶ 26.  Although she was visibly in severe distress from her pain, her laboratory test results were normal, except for "very mild hypokalemia" and mild dehydration. *Id.* ¶¶ 26-27.  X-ray of the abdomen revealed a significant amount of stool with a few air-fluid levels. *Id.* ¶ 27.  Dr. John Walther, the treating physician, administered an opioid analgesic to treat pain. *Id.* ¶ 28.  After her pain had decreased to 0 on a scale of 1 to 10, Ms. Hermosillo was discharged around 5:10 a.m. with a prescription for a laxative. *Id.* ¶ 28-29.

Later on the same day, around 9:09 a.m., Ms. Hermosillo paid WCH ER a second visit because her pain had resumed. *Id.* ¶ 30.  Dr. Gordon Kaplan identified her history of having had a gastric bypass, found that the pain was a grade 10 on a 1 to 10 scale, and found her condition a "certified medical emergency." *Id.*  After arriving at the ER, Ms. Hermosillo received Ativan, a medication for anxiety and soap-suds enema per Dr. Kaplan's instruction. *Id.* ¶ 32.  Later at 11:28 a.m., Dr. Kaplan ordered Haldol, an antipsychotic medication, to be administered to Ms. Hermosillo. *Id.* ¶ 33.  There was also an attempt to administer a preparation to evacuate the bowels and to conduct CT scans, which were later canceled. *Id.* ¶ 34-35.

At 2:30 p.m., Ms. Hermosillo was discharged with a pain level of 8 on a 1 to 10 scale. *Id.* ¶ 38.  After she returned home, Ms. Hermosillo deteriorated and the arriving EMS found her in cardiac arrest. *Id.* ¶ 43.  Ms. Hermosillo was transported to the WCH ER, where she was resuscitated. *Id.* ¶¶ 43-44.  However, she later passed away after a second cardiac arrest the next

1  day on March 3, 2013. *Id.* ¶ 47. The cause of death was found to be peritonitis and septic shock
2  due to an internal hernia. *Id.* ¶¶ 46-50.
3      Plaintiff filed this suit against WCH on February 27, 2015. ECF 1. After granting in part
4  WCH's motion to dismiss and motion to strike, Plaintiff filed a first amended complaint. ECF 49.
5  After this Court granted in part WCH's motion to dismiss the first amended complaint, Plaintiff
6  filed a second amended complaint, which WCH now moves to dismiss.

## II. LEGAL STANDARD

### A. Fed. R. Civ. Proc. 12(b)(6)

"A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted 'tests the legal sufficiency of a claim.'" *Conservation Force v. Salazar*, 646 F.3d 1240, 1241–42 (9th Cir. 2011) (quoting *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001)). When determining whether a claim has been stated, the Court accepts as true all well-pled factual allegations and construes them in the light most favorable to the plaintiff. *Reese v. BP Exploration (Alaska) Inc.*, 643 F.3d 681, 690 (9th Cir. 2011). However, the Court need not "accept as true allegations that contradict matters properly subject to judicial notice" or "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (internal quotation marks and citations omitted). While a complaint need not contain detailed factual allegations, it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when it "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

### B. Emergency Medical Treatment and Active Labor Act

EMTALA imposes two requirements on hospital emergency departments: (1) if any individual comes to the emergency department requesting examination or treatment, a hospital must provide for "an appropriate medical screening examination within the capability of the hospital's emergency medical department" (this is referred to as the "screening" prong); and (2) if the hospital determines that an emergency medical condition exists, it must provide "such

1 treatment as may be required to stabilize the medical condition" (the "stabilization" prong). 42
2 U.S.C. § 1395dd. Section 1395dd(c) also specifies conditions under which a patient may be
3 transferred.

### III. DISCUSSION

WCH contends that Plaintiff fails to state claims under EMTALA for cursory examination, for failure to stabilize, and for improper transfer. Before turning to the merits of these arguments, the Court addresses WCH's request for judicial notice.

#### A. Judicial Notice

WCH has requested judicial notice of fourteen documents, attached to the request as Exhibits A through N: (A) Plaintiff's initial state court complaint filed on March 3, 2014; (B) Plaintiff's first amended state court complaint filed on May 29, 2014; (C) Plaintiff's second amended state court complaint filed on December 26, 2014; (D) Plaintiff's third amended state court complaint filed on February 23, 2015; (E) Plaintiff's initial federal court complaint filed on February 27, 2015; (F) Plaintiff's first amended federal court complaint; (G)-(L) federal court opinions; (M) physician and nurse notes from WCH for Ms. Hermosillo's first visit on March 2, 2013; and (N) physician and nurse notes from WCH for Ms. Hermosillo's second visit on March 2, 2013. RJN, ECF 73.

Judicial notice is appropriate with respect to Exhibits A to L because they are documents publicly filed with federal courts and the Santa Cruz Superior Court. *See Mir v. Little Co. of Mary Hosp.*, 844 F.2d 646, 649 (9th Cir. 1988) (court may take judicial notice of matters of public record). Although Plaintiff objects to these exhibits on the basis that they are either not relevant or non-binding authorities, Plaintiff does not dispute the authenticity of Exhibits A to L. The request for judicial notice is GRANTED with respect to Exhibits A to L.

However, the Court does not take judicial notice of Exhibits M and N because medical records are not the sort of documents of which judicial notice may be taken. It cannot be said that the contents of these records are facts generally known within the Court's territorial jurisdiction or that can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned. Fed. R. Evid. 201(b); *e.g.*, *Polk v. Creamer-Todd*, No. 14-04375, 2016 WL 771329, at

*10 (N.D. Cal. Feb. 29, 2016).

B.  **Plaintiff's Claim for Disparate or Cursory Examination**

Plaintiff's first cause of action alleges that WCH did not provide an appropriate medical screening examination during Ms. Hermosillo's second March 2, 2013 visit to the WCH ER in violation of EMTALA. SAC ¶¶ 54-56. WCH argues that the SAC contains no allegations supporting the conclusory contention that Ms. Hermosillo received a disparate or cursory examination. Mot. 7. According to WCH, Plaintiff alleges that Dr. Kaplan physically examined Ms. Hermosillo, documented complaints of pain and a history of gastric bypass, and found a certified medical emergency. *Id.* WCH contends that such allegations at best suggest potential negligence in discovery of the internal hernia, which is not actionable under EMTALA. *Id.* at 7-8. In opposition, Plaintiff argues that Ms. Hermosillo did not receive any diagnostic testing during her second ER visit on March 2, 2013. Opp'n 5. Plaintiff asserts that in comparing Ms. Hermosillo's second visit to her first visit, only a perfunctory examination was performed during her second visit, thus failing to identify her critical condition. *Id.* at 11 (citing SAC ¶¶ 5, 37, 59-61). Plaintiff further claims that WCH had a sepsis prevention protocol in place that was not applied to Ms. Hermosillo during her second visit. SAC ¶¶ 65-68.

EMTALA requires hospitals to conduct an examination that is "reasonably calculated to identify the patient's critical medical condition." *Hoffman v. Tonnemacher*, 425 F. Supp. 2d 1120, 1130 (E.D. Cal. 2006). EMTALA also protects an individual from receiving a screening different from other individuals presenting with the same or similar conditions at that hospital. As the Southern District of California stated:

> [A] hospital satisfies EMTALA's 'appropriate medical screening' requirement if it provides a patient with an examination comparable to the one offered to other patients presenting similar symptoms, unless the examination is so cursory that it is not 'designed to identify acute and severe symptoms that alert the physician of the need for immediate medical attention to prevent serious bodily injury.' [F]aulty screening, in a particular case, as opposed to disparate screening or refusing to screen at all, does not contravene the statute. In short, EMTALA is an equal access statute that imposes no quality of care standards on hospitals.

*Moore v. Tri-City Hosp. Found.*, Case No. 13-0341, 2013 WL 2456027, at *2 (S.D. Cal. June 6,

5

2013) (internal citations and quotations omitted); *see also Jackson v. East Bay Hosp.*, 246 F.3d 1248, 1256 (9th Cir. 2001).

Like Plaintiff's prior complaint, the allegations in the SAC may support a malpractice cause of action, but not a cause of action for cursory or disparate screening under EMTALA. Notably, Plaintiff's admission in the SAC that Dr. Kaplan found Ms. Hermosillo's condition to be a "certified medical emergency" defeats the claim for cursory or disparate examination. SAC ¶ 30; *Sanders v. Palomar Med. Ctr.*, No. 10-0514, 2010 WL 2635627, at *3 (S.D. Cal. June 30, 2010). The plaintiff in *Sanders* alleged that the hospital "failed to provide an appropriate medical screening examination" for his dangerously high blood pressure. *Id.* at *1-2. However, given that the hospital determined that the plaintiff suffered from "an emergency medical condition," the *Sanders* court inferred that the hospital must have provided an adequate screening in order to identify that condition. *Id.* at *3. The court then concluded that the plaintiff did not sufficiently allege that the hospital violated EMTALA's screening requirement. *Id.* Similarly here, the SAC alleged that an examination was performed and Dr. Kaplan found a "certified medical emergency." SAC ¶ 30. As such, the examination received by Ms. Hermosillo must have been adequate for Dr. Kaplan to come to that conclusion. Diagnosing the wrong condition is outside the scope of EMTALA and covered completely by state medical malpractice claims already litigated in state court. The SAC thus fails to support an EMTALA claim of cursory or disparate screening.

In an attempt to support the allegation of disparate treatment, Plaintiff argues that Ms. Hermosillo's second visit should be compared with her first. Opp'n 17-18; SAC ¶¶ 59-68. Plaintiff also contends that Ms. Hermosillo received a different patient number and signed another consent form for her second visit so she should receive the same treatment during her second visit as her first. Opp'n 18. However, these factual allegations do not speak to what was "offered to *other* patients with similar symptoms" and whether the treatments were disparate. *Jackson*, 246 F.3d at 1255 (emphasis added).

Moreover, the Court agrees with WCH that Ms. Hermosillo's two visits on March 2, 2013, presented different circumstances that would preclude comparison with each other. Reply 4-5,

ECF 76. There is no support for the contention that Ms. Hermosillo's first visit was a similar situation to her second visit and the SAC belies that assumption. During her first visit, the physician observed that the pain was associated with nausea and vomiting over 2 hours, and the abdominal examination revealed voluntary guarding and "moderate tenderness to palpation." SAC ¶¶ 25-27. In contrast, during her second visit, no vomiting and nausea were documented during the initial examination, and her abdomen was without guarding or tenderness. *Id.* ¶ 30. In addition, because Ms. Hermosillo was treated with an opioid analgesic and received a prescription for a laxative during her first visit, her second visit presented circumstances different from her first visit given that she had already received at least an analgesic. *Id.* ¶ 28. Further, the attending physician of the second visit was aware of Ms. Hermosillo's first visit and nothing suggests that EMTALA requires identical tests to be re-administered only hours later. *See id.* ¶ 45. A plausible comparison would be to compare Ms. Hermosillo to other patients who have similar symptoms when making a second presentation on the same day. As such, Ms. Hermosillo's two visits cannot be compared to remedy the pleading deficiency.

Plaintiff's reliance on the proposition in *Correa v. Hosp. San Francisco* that hospitals should provide a "level of screening uniformly to all those who present substantially similar complaints" is unavailing. 69 F.3d 1184, 1192 (1st Cir. 1995). The *Correa* court found that the hospital's delay in attending to the patient was so egregious "as to amount to an effective denial of a screening examination." *Id.* at 1193. In reaching that conclusion, the court noted the hospital's policy requirement of taking the vitals of every patient and that the plaintiff received no screening at all. *Id.* As such, *Correa* still compared what the plaintiff received to what was "offered to other patients" and does not support Plaintiff's contention to compare Ms. Hermosillo's second visit to her first. Accordingly, the SAC remains deficient for not alleging facts showing a comparison between Ms. Hermosillo and other similarly situated patients. *Eberhardt v. City of Los Angeles*, 62 F.3d 1253, 1258 (9th Cir. 1995) ("[T]he test is whether the challenged procedure was identical to that provided similarly situated patients, as opposed to whether the procedure was adequate as judged by the medical profession.").

### C. Plaintiff's Claim for Failure to Stabilize and for Improper Transfer

For the second cause of action, Plaintiff alleges that WCH failed to stabilize Ms. Hermosillo during her second visit after identifying her "emergency medical condition." SAC ¶¶ 74-79. Because WCH discharged her without stabilization, Plaintiff also alleges that WCH failed to properly transfer her in accordance with EMTALA, the basis for the third cause of action. *Id.* ¶¶ 88-91. WCH argues that Plaintiff fails to allege a claim for failure to stabilize and for improper transfer because WCH had no duty to stabilize given that the true cause of the symptoms, internal hernia, was never diagnosed. Mot. 9, 11 (citing *Bryant v. Adventist Health Sys./W.*, 289 F.3d 1162, 1166 (9th Cir. 2002)). WCH further contends that even if severe pain was the emergency medical condition, the pain improved and the later complications were caused by internal hernia, and not pain. Mot. 10. Plaintiff contends in opposition that EMTALA imposes a duty to stabilize under a strict liability requirement. Opp'n 13-14. Plaintiff further argues that given "severe pain" was the emergency medical condition, Ms. Hermosillo did not receive pain treatment and had a pain level of 8 out of 10 when she was discharged. *Id.* at 14 (citing SAC ¶¶ 74-83).

WCH's arguments against Plaintiffs' second and third EMTALA claims regarding a failure to stabilize and improper transfer are similar so the Court addresses these two claims together. The Court finds that Plaintiff has plausibly alleged that WCH failed to stabilize and that WCH failed to properly transfer. The SAC alleges that the emergency medical condition was severe pain. SAC ¶ 74. Yet, Dr. Kaplan ordered administration of anxiety medicine Ativan, antipsychotic drug Haldol, and soap-suds enema, none of which treated her pain. The psychiatric drugs were given without a diagnosis of a mental condition, and when Ms. Hermosillo was discharged, she still had a pain level of 8 out of 10. *Id.* ¶ 79. As such, although the drugs effectively "quieted" Ms. Hermosillo, the allegations support Plaintiff's contention that the drugs did not stabilize her severe pain. *Id.* ¶ 79-81. Nevertheless, the Court recognizes that Ms. Hermosillo died from internal hernia and not from severe pain and that there might be evidence suggesting that she was stable upon release. Mot. 9-10. Given the nature of the allegations, the litigation could very well deviate toward medical malpractice claims so the Court cautions Plaintiff to stay clear from a medical malpractice claim and to focus on proving the EMTALA

claim of failing to stabilize severe pain.

WCH further attacks the claim for failure to stabilize on the basis that the issue is a misdiagnosis and therefore there was no duty to stabilize the internal hernia or sepsis, which were the cause of death. Mot. 9. WCH relies on the Ninth Circuit's rulings in *Jackson* and *Eberhardt* to support this claim. 246 F.3d at 1257; 62 F.3d at 1259.

In *Jackson*, the patient had already visited the hospital emergency room on two prior occasions one day and three days prior, when on the third visit the hospital staff determined that the patient was "agitated," "posing a risk to himself and proceeded to stabilize him with sedating medication. 246 F.3d at 1253. However, at that time, the hospital did not diagnose the patient with clomipramine drug toxicity, which ultimately caused his death. *Id.* Accordingly, the Ninth Circuit held that given that the hospital stabilized the agitation, the only condition identified, its "failure to diagnose [the drug toxicity as] the true cause of [the plaintiff's] symptoms cannot serve as the basis for a violation of EMTALA's stabilization requirements." *Id.* at 1257.

In *Eberhardt*, the medical staff diagnosed the patient with heroin overdose and treated him accordingly. 62 F.3d at 1255. Thirty hours later after the patient left the hospital, the Los Angeles police officers found him armed with a machete, breaking windows of a private residence. *Id.* When he charged at one of the officers, a police officer fatally shot him. *Id.* The decedent's father brought suit alleging that the hospital failed to stabilize the decedent in violation of EMTALA. *Id.* at 1257. Affirming the lower court's summary judgment, the Ninth Circuit found that the plaintiff did not proffer any evidence showing that the hospital violated EMTALA. *Id.* First, the court noted that there was no evidence that decedent's "suicidal tendency was manifested by 'acute' or 'severe' symptoms, or that the condition required immediate medical attention." *Id.* at 1258. Second, the court found that the hospital did not detect the decedent's alleged suicidal tendency so it had no obligation to stabilize this unapparent medical condition. *Id.* at 1259.

In this case, although it is undisputed that WCH failed to diagnose the conditions that caused Ms. Hermosillo's death, it did identify severe pain as a certified medical condition and thus it did have a duty to stabilize that condition. The SAC alleges that Ms. Hermosillo "was discharged to home by nursing personnel upon Dr. Kaplan's order" despite remaining in

significant pain, and that her pain level was still 8 out of 10 when she was discharged. SAC ¶¶ 30, 38. The SAC also alleges that WCH failed to administer additional pain medication during her second visit. *Id.* ¶ 36. Unlike in *Jackson*, where the hospital stabilized the patient's "agitation" but did not diagnose his drug toxicity, the allegations here state that WCH failed to stabilize "severe pain," a certified medical condition that was diagnosed by WCH. This case is also distinguishable from *Eberhardt*, in which the decedent's suicidal tendency was never found to be an emergency medical condition prior to his departure from the hospital. In contrast to *Eberhardt*, Dr. Kaplan had identified "severe pain" as Ms. Hermosillo's certified medical emergency. *E.g.*, *id.* ¶ 77. Accordingly, the allegations are sufficient to support Plaintiff's claim that WCH at least had a duty to stabilize the identified certified medical condition, and that Ms. Hermosillo was not in stable condition regarding severe pain when she was discharged. *Id.* ¶¶ 77-79.

It is worth mentioning that WCH had a duty to stabilize only the diagnosed condition. *Jackson*, 246 F.3d at 1257. Were this cause of action to rely on any undiagnosed conditions, such as internal hernia, the cause of action would not stand as WCH would have no duty to stabilize those conditions. Provided that this cause of action specifically relates to WCH's duty to stabilize "severe pain," the Court finds this cause of action adequately alleged. SAC ¶¶ 74-75, 77.

WCH's other cited case authority does not alter the requirement that it needed to stabilize Ms. Hermosillo's emergency medical condition of "severe pain" before discharging her. *E.g.*, *Moore v. Tri-City Hosp. Found.*, No. 13-0341, 2013 WL 2456027, at *2 (S.D. Cal. June 6, 2013) (in a case that does not involve a claim for failure to stabilize, holding that a hospital is not required to provide an evaluation by a specialist, nor does the statute entitle a patient to demand any specific method of screening); *Herisko v. Tenet Healthcare Sys. Desert Inc.*, No. 13-00136, 2013 WL 1517973, at *4 (C.D. Cal. Apr. 11, 2013) (same).

### D. Plaintiff's Claim for Punitive Damages

WCH argues that the allegations of fraud in support of punitive damages lack "particularity" as required by the Federal Rules of Civil Procedure Rule 9(b). Mot. 11. Plaintiff claims that the consent to the treatment of Haldol was procured by fraud. Opp'n 23. Plaintiff then argues that the allegations are more than sufficient under California Civil Code section 3294. *Id.*

10

1  Since a prior order has previously allowed the allegations for punitive damages to go forward, the
2  Court will not dismiss the allegations now.  ECF 69.

### E.   Leave to Amend

In deciding whether to grant leave to amend, the Court must consider the factors set forth by the Supreme Court in *Foman v. Davis*, 371 U.S. 178 (1962), and discussed at length by the Ninth Circuit in *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048 (9th Cir. 2009).  A district court ordinarily must grant leave to amend unless one or more of the *Foman* factors is present:  (1) undue delay, (2) bad faith or dilatory motive, (3) repeated failure to cure deficiencies by amendment, (4) undue prejudice to the opposing party, and (5) futility of amendment.  *Eminence Capital*, 316 F.3d at 1052.  "[I]t is the consideration of prejudice to the opposing party that carries the greatest weight."  *Id.*  However a strong showing with respect to one of the other factors may warrant denial of leave to amend.  *Id.*

Three of the factors – undue delay, bad faith, or dilatory motive – are not applicable here because the present determination on whether to grant leave does not stem from a motion for leave by Plaintiff and there is no evidence or allegation of "undue delay, bad faith or dilatory motive" over the course of this case.  Undue prejudice to the opposing party also has limited application here because the complaint has given Defendants fair notice of the asserted claims.  The Court, however, finds that the remaining factors – repeated failure to cure deficiencies by amendments previously allowed, and futility of the amendment – to be dispositive.  "[A] proposed amendment is futile only if no set of facts can be proved under the amendment to the pleadings that would constitute a valid and sufficient claim or defense." *Miller v. Rykoff-Sexton, Inc.*, 845 F.2d 209, 214 (9th Cir. 1988).

Here, Plaintiff has had two opportunities for substantive amendments to address the same deficiencies identified by the multiple rounds of motions to dismiss.  As such, there is a repeated failure to cure the deficiencies.  Further, in the various iterations of the complaint, there appears no set of facts that could constitute sufficient allegations to support an EMTALA claim for cursory and disparate examination.  Accordingly, the Court GRANTS IN PART and DENIES IN PART WCH's motion to dismiss without leave to amend.

**IV. ORDER**

For the foregoing reasons, IT IS HEREBY ORDERED that:

1) WCH's motion to dismiss is GRANTED on the first cause of action relating to disparate and inappropriate medical screening;

2) WCH's motion to dismiss is DENIED on the second cause of action relating to failure to stabilize identified emergency medical condition;

3) WCH's motion to dismiss is DENIED on the third cause of action relating to improper transfer of patient with identified emergency medical condition not stabilized;

4) WCH's motion to dismiss is DENIED with respect to allegations in support of punitive damages under California Civil Code section 3294;

5) WCH's motion to dismiss claims against Defendant Community Health Systems, Inc. is terminated as moot; and

6) Stay of discovery is LIFTED.

Dated: January 25, 2017

_____
BETH LABSON FREEMAN
United States District Judge